IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

DANIEL LIECHTI, as personal )
representative of SIDNEY LIECHTI, )
deceased, )
      Plaintiff, )
)
v. )  Case No.  CIV-11-0025-HE
)
PE BEN USA, INC., )
)
      Defendant. )

_____

**MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT PE BEN USA, INC.
AND BRIEF IN SUPPORT**

_____

Robert S. Lafferrandre, OBA No. 11897
Randall J. Wood, OBA No. 10531
PIERCE COUCH HENDRICKSON
 BAYSINGER & GREEN, L.L.P.
1109 N. Francis
Oklahoma City, Oklahoma  73106
Telephone:  (405) 235-1611
Facsimile:  (405) 235-2904
rlafferrandre@piercecouch.com
rwood@piercecouch.com

*Attorneys for Defendant Pe Ben USA,
Inc.*

July 18, 2012

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................................ii

INDEX OF EXHIBITS ...................................................................................................iv

I.      INTRODUCTION.........................................................................................................1

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS..............................................3

III.    Plaintiff's Claims are Barred by the Exclusive Remedy
        Provisions of the Oklahoma Workers' Compensation Act................................10


CONCLUSION...............................................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Armstead v. Schwegmann Giant Super Markets, Inc.,* 618 So.2d 1140 (La.App. 4 Cir.1993) .. 22

*Armstrong v. Carr*, 77 P.3d 598, 603 (Okla. Civ. App. 2003) .................................................... 14

*Bergeron v. Murphy Oil, U.S.A., Inc.*, 05–0271, 903 So.2d 496  (La.App. 4 Cir. 2005) ............ 20

*Brown v. Pennzoil-Quaker State Co.*, 175 S.W.3d 431 (Tex. App. 2005) ................................. 23

*CompSource Okla. v. L & L Constr., Inc.*, 2009 OK CIV APP 28, 207 P.3d 415, 419 ................. 13

*Cortez v. Hooker Chemical*, 402 So.2d 249 (Ct. App. La., 4th Cir. 1981) ................................. 20

*Davis v. CMS Cont'l Natural Gas, Inc.*, 23 P.3d 288 (Okla. 2001) ............................................ 11

*Fleetwood Homes of Fla. v. Reeves*, 833 So. 2d 857 (Fla. 2d DCA 2002) ................................ 18

*Jensen v. Sport Bowl, Inc.*, 469 N.W.2d 370, 372 (S.D. 1991) .................................................... 14

*Parret v. UNICCO Serv. Co.*, 127 P.3d 572, 579 (Okla. 2005) ....................................... 11, 12, 16

*Price v. Howard*, 2010 OK 26, 236 P.3d 82 ...................................................................... passim

*Reeves v. Structural Preservation Systems*, 731 So.2d 208 (La. 1999) .............................. 20, 21

*Roberts v. Barclay*, 369 P.2d 808 (Okla. 1962) ....................................................................... 11

*Shue v. High Pressure Transports, LLC*, 10-CV-0559-CVE-PJC ........................................... 18, 20

*Simoneaux v. Excel Group, LLC*, 936 So. 2d 1246 (La. 2006) .................................................. 22

*Sorban v. Sterling Engineering Corp.*, 79 Conn.App. 444, 830 A.2d 372 (2003) .................... 18

*Sullivan v. Lake Compounce Theme Park, Inc.*, 277 Conn. 113, 889 A.2d 810 (2006) ........... 17

*Tapia v. Schwegmann Giant Supermarkets, Inc.*, 590 So.2d 806 (La.App. 4 Cir.1991) .......... 23

*Teal v. The Colonial Stair & Woodwork Co.*, No. CA2004-03-009, 2004 WL 2676331 .......... 15

**Statutes**

85 O.S. § 11(A) ....................................................................................................................... 10

**Treatises**

Larson, 2A *Workmen's Compensation Law*, § 68.13 (1989) ..................................................... 21

## INDEX OF EXHIBITS

Exhibit 1      Affidavit of Bill Cunningham

Exhibit 2       Affidavit of Steve Johnson

Exhibit 3      Tool Box Meeting Notes

Exhibit 4      Affidavit of Randy Ostman

Exhibit 5      First Amended Complaint

Exhibit 6      Plaintiff's Responses to Defendant's Interrogatories

Exhibit 7      OSHA Citation

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

DANIEL LIECHTI, as personal            )
representative of SIDNEY LIECHTI,      )
deceased,                              )
            Plaintiff,                 )
                                       )
v.                                     )   Case No.  CIV-11-0025-HE
                                       )
PE BEN USA, INC.,                      )
                                       )
            Defendant.                 )

## MOTION FOR SUMMARY JUDGMENT
## OF DEFENDANT PE BEN USA, INC., AND BRIEF IN SUPPORT

Comes now Defendant Pe Ben USA, Inc., ("Pe Ben") and submits this motion for summary judgment on the grounds that the pleadings and evidence filed with this motion show that there is no substantial controversy as to any material fact and that Pe Ben is entitled to judgment as a matter of law. Plaintiff's claims are barred by the exclusive remedy provisions of the Workers' Compensation Act.

## I.  INTRODUCTION

Sidney Liechti, Plaintiff's decedent, tragically received fatal injuries on December 23, 2009, at a job site while working for Pe Ben.  Because Liechti's injuries occurred during Liechti's employment with Pe Ben, Liechti's injuries are clearly covered by the exclusive remedy provisions of the Oklahoma Workers' Compensation Act.  However, Plaintiff asserts that this tort action falls outside the Oklahoma Workers' Compensation Act. Plaintiff's suit is based on *Parret v. Unicco*

*Service Co.*, 2005 OK 54, 127 P.3d 572. In *Parret*, the Oklahoma Supreme Court allowed an employee to assert an injury received on the job as a tort claim against his employer **only if** the injury was caused by the intentional act of the employer or if the employer knew that the injury was "substantially certain" to occur.

Pe Ben contracted to unload oil and gas transmission pipe from a rail yard in Ponca City and transport that pipe to a pipe storage yard in another part of Kay County, Oklahoma. The pipe was transported by trucks from the rail yard to the pipe storage yard. Once the trucks carrying the pipe arrived at the pipe storage yard, a large vacuum hoe picked up each section of pipe off the truck and carried the pipe over to earthen berms and stacked the pipe. Once the pipe was unloaded, the truck driver would check his perimeter and drive off. Laborers at the pipe storage site would then insert large clips into the ends of the pipes to secure the pipes in place.

On December 23, 2009, Randy Ostman, a Pe Ben truck driver, delivered a section of pipe to the pipe storage yard. Sid Liechti was one of the laborers who was working at the pipe storage yard. After Randy Ostman helped to loosen the straps holding the pipe in place on the truck, Ostman returned to the cab of his truck and waited while the pipe was unloaded. After the pipe was unloaded, Mr. Ostman checked his mirrors and looked off to his right to check the location of another laborer who was standing on the passenger's side of the truck. In the meantime, Sid Liechti had come up to the stack of pipe (that was located a few feet away from the

waiting truck driven by Randy Ostman), and kneeled down on his knees to insert the clips into the ends of the pipe.  When he did so, it appears that Liechti's feet stuck out into the path of the truck tires.  Not seeing that Liechti had done this and while looking off to his right, Randy Ostman believed that he was given a wave to proceed by one of the other workers. Ostman started to pull forward.  Tragically, the truck tires struck Liechti's feet and somehow pulled Liechti's body (or Liechti turned his body) into the path of the truck tires.  Liechti was run over by the truck tires and suffered severe injuries.  Liechti later died at the hospital.

This was an unfortunate accident that was entirely unforeseen by anyone working on this project and by Pe Ben.  This type of accident had never happened before in **thousands** of truck trips.  However, Plaintiff asserts that he can bypass the Workers' Compensation Court and sue in tort because Pe Ben allegedly knew that it was "substantially certain" that Sid Liechti would be accidentally run over by the truck.  As will be established by the Statement of Undisputed Material Facts and the brief filed herein, it is clear that Pe Ben <u>did not</u> act with substantial certainty of harm.  The Workers' Compensation Act's exclusive remedy provisions bar Plaintiff's present tort claims.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Pe Ben USA, Inc., is a Texas corporation based in Houston, Texas.  [Exh. 1, Affidavit of Bill Cunningham, ¶ 1.]

2.      In November of 2009, Pe Ben contracted to stockpile oil and gas transmission pipe.  Pe Ben was responsible for transporting the pipe from a rail yard in Ponca City and transporting the pipe by truck to a pipe storage yard located in another part of Kay County, Oklahoma.  [Exh. 1, ¶ 2.]

3.      By December 7, 2009, a crew of approximately 15 workers had been hired and placed at sites in Ponca City and the Red Rock pipe storage site. Sid Liechti was an employee of Pe Ben and was assigned as a laborer at the Red Rock pipe storage site. [Exh. 1, ¶ 3; see also Affidavit of Steve Johnson, Exh. 2, ¶ 5.]

4.      Although it was originally anticipated that pipe would start to be delivered at the rail yard on December 7, 2009, pipe did not start arriving until 10 days later. From December 7th through December 22nd, 2009, pipe had been delivered only three days.  [Exh. 1, ¶ 4; Exh. 2, ¶ 4.]

5.      The site supervisor for the Kay County work site was Steve Johnson. [Exh. 1, ¶ 5] By December of 2009, Steve Johnson had worked on other projects for Pe Ben and during those other projects had received safety training on a number of topics, including work site safety and instruction on staying clear of trucks during and after the trucks unloaded pipe. [Exh. 2, ¶¶ 1 -2.]  This periodic safety instruction included general common sense guidelines that required truck drivers to check their mirrors and check the perimeter of the truck before proceeding or backing up. [Id., ¶ 2]

6.     During the period of December 7, 2009, through December 22, 2009, there were days when the crews had no pipe to unload.  However, during these days Steve Johnson conducted a number of safety meetings with the crews. [Exh. 2, ¶ 4] These safety meetings included instruction on personal protective equipment, pinch points, and safety practices for movement of trucks. [Exh. 2, ¶ 4; see also  ¶ 6:  "*On numerous occasions I instructed the drivers in the safety meetings to check their mirrors, to be aware of the perimeter of the truck, and to not be distracted in their operation of the trucks. I stressed to the drivers to not become complacent because of the repetitive nature of the activity.*"] Steve Johnson also frequently reminded the drivers and laborers to be aware of the dangers of getting between a truck and pipe. [Id., ¶ 4]  These safety meetings were held at the beginning of the work day and were called "tool box meetings."  [Exh. 2, ¶ 4]   Tool Box Meeting notes prepared by Steve Johnson are attached hereto as Exhibit 3. See also [Exh. 2, ¶ 4].   As shown by the  Affidavit  of  Steve  Johnson  and  the  Tool  Box  Meeting  notes,  Sid  Liechti participated in those safety training sessions.   [Id., ¶ 5]

7.     In December of 2009, the oil and gas transmission pipe was delivered to a rail yard in Ponca City.  Pe Ben employees then loaded the pipe onto trucks to be hauled to the Red Rock storage site in Kay County.  [Exh. 1, ¶ 6]  At the Red Rock storage site, earthen berms had been constructed and the pipe was to be unloaded from the trucks and laid across these earthen berms for storage.  Id.  Trucks carrying a single piece of pipe would pull up parallel to the berms.  [Exh. 4, ¶ 4; Exh. 1, ¶ 7.]  A

large vacuum hoe would then lift the pipe off each truck and would lay the pipe perpendicular across the earthen berms.  Laborers at the site would then insert clamps into the ends of the stacked pipe to secure the pipe.  [Exh. 1, ¶ 8]

8.     On December 23, 2009, trucks arrived at the Red Rock worksite, each carrying a single piece of pipe.  Randy Ostman drove one of these trucks.  [Exh. 4 – Affidavit of Randy Ostman, ¶ 4]

9.     By December of 2009, Randy Ostman was an experienced truck driver and had experience in hauling pipe.  Ostman had been driving trucks for 22 years.  Ostman had worked for Pe Ben periodically since 1998 and had worked for Pe Ben continuously for the three years prior to December of 2009.   [Exh. 4, ¶ 1]  Ostman participated in safety meetings with Steve Johnson.  Ostman understood that he needed to check his surroundings and make sure that the area around his truck was clear before he proceeded.  [Exh. 4, ¶ 2:  *Through safety instruction that I received from Steve Johnson, and through prior safety orientation that I had received in prior years, I knew that a driver should check the perimeter of the truck to make sure that everyone was clear prior to moving.*"  See also testimony of Steve Johnson, Exh. 2, ¶ 7: "*I had conducted a number of safety meetings with Randy Ostman present wherein I reminded the drivers and staff to be sure that everyone was clear of the trucks, that mirrors had been checked, that the perimeter had been checked and that everything was clear before trucks backed up or moved forward.*"]

10.     On December 23, 2009, Randy Ostman was driving a truck that had been loaded with one pipe at the Ponca City rail yard.  Ostman drove his truck to the Red Rock storage site.  At the storage site, Ostman pulled his truck parallel with the earthen berms.  Ostman got out of the truck and helped loosen the straps that were holding the pipe on the truck.  Victorino Bravo, a laborer on the storage site, also assisted in loosening the straps.  [Exh. 4,  ¶  4]  After the straps were removed from the pipe, the vacuum hoe operator lifted the pipe off of the truck and placed it onto the earthen berms.  [Id.]

11.     As the pipe was being lifted from the truck, Ostman returned to the truck cab.  Ostman looked in his passenger side mirror and saw Bravo and Sid Liechti back at the end of the truck talking.  Ostman then began working on paperwork in the cab of the truck.  Ostman then looked through the rear window of the truck to watch Victorino Bravo, who was standing by the back of the truck.  Ostman was watching Bravo to make sure that Ostman knew where Bravo was.  [Exh. 4, ¶ 5].

12.     While Ostman was watching Bravo, Ostman observed Bravo give a wave, which Mr. Ostman took as a signal to move forward.  Ostman had previously checked his mirrors and Sid Liechti was not between the truck and the pipe.  [Exh. 4, ¶¶ 5 - 6]

13.     After the pipe was laid on the ground, Mr. Liechti walked between the truck and the pipe to place a hairpin clamp on the pipe.  In doing so, he knelt down

and placed his legs in the path of the trailer wheels.   Ostman had not seen Liechti do this before Ostman started to pull away.   As Ostman pulled away, he checked the driver's side mirror and saw that he had struck Mr. Liechti.   Ostman had gone approximately 10 feet before he stopped.   Ostman stopped his truck immediately and ran back to help Mr.  Liechti.  [Exh. 4, ¶ 6.].

14.   Liechti was transported to the hospital and later died of his injuries. [Exh. 5, ¶ 11:  First Amended Complaint affirms that Sid Liechti died that same day.].

15.   Pe Ben estimates that it has transported over 226,000 sections of pipe and estimates that its employees have conducted more than **45,000** operations to unload pipe**.  Pe Ben has never had an employee run over or struck by a truck in over 45,000 thousand trips to transport and stockpile pipe**.  [Exh. 1, ¶ 9.]

16.   In Interrogatories, Plaintiff was asked to identify all evidence that supported Plaintiff's accusation that Pe Ben "did not provide a safe place to work, reasonably safe materials and equipment with which to work and reasonably safe methods by which to work." [Exh. 6, Interrogatory No. 13, p. 12]   Plaintiff cited only to the results of an OSHA investigation:

_ Without waiving said objections, see OSHA Citation I Item I. Type of Violation: Serious. Section 5 (a)(1) of the Occupational Safety and Heath Act of 1970: "The employer did not furnish employment and a place of employment which was free from recognized hazards that were causing or likely to cause death or serious injury..." Further, PeBen had no policies and procedures in effect according the OSHA report for locating and ensuring ground personal were clear prior to the movement of vehicles and/or equipment.  Further, according to the OSHA investigation PeBen had knowledge of the process and personnel involved during the operations for unloading pipe from trucks in the staging yard and knew that injuries could result.

Plaintiff reserves the right to supplement and/or amend the answer to this Interrogatory as

Exh. 6, Answer to Interrogatory No. 13, p. 13.

17.     In Interrogatories, Plaintiff was asked to identify all evidence that supported Plaintiff's accusation that Pe Ben "intended the act that caused Sidney Liechti's injuries and death with knowledge that serious injury or death was substantially certain to follow" and that Pe Ben had a "subjective appreciation" of such substantial certainty.  [Exh. 6, Interrogatory No. 14, p. 13]  Plaintiff cited only to language from the OSHA investigation.   See Exh. 6, p. 14:

Without waiving said objections, the OSHA citation states that "[t]he employer did not furnish employment and a place of employment which was free from recognized hazards that were causing or likely to cause death or serious injury…"  Further, PeBen had no policies and procedures in effect according the OSHA report for locating and ensuring ground personal were clear prior to the movement of vehicles and/or equipment.  Further, according to the OSHA investigation, PeBen had knowledge of the process and personnel involved during the operations for unloading pipe from trucks in the staging yard and knew that injuries could result.  Further, Defendant had no "special precautions or procedures related to the movement of trucks and equipment. In addition there were no procedures for locating and ensuring ground personnel were clear prior to the movement of vehicles and equipment."

### III. Plaintiff's Claims are Barred by the Exclusive Remedy Provisions of the Oklahoma Workers' Compensation Act.

The deceased's representative's present tort claims against the employer, Pe Ben, for injuries sustained on the job are entirely barred by the exclusive remedy provisions of the Workers' Compensation Act. Under the Workers' Compensation Act, 85 O.S. §§ 1 *et seq.*, an employer is liable "for the disability or death of an employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of employment, without regard to fault." 85 O.S. § 11(A). Section 12 of the Workers' Compensation Act further provides that "[t]he liability prescribed in Section 11 of this title shall be exclusive and in place of all other liability of the employer and any of his employees . . . ."[1] The Oklahoma

---

[1] Sections 11 and 12 of the Workers' Compensation Act were recently recodified into the Workers' Compensation Code, 85 O.S. §§ 301, *et seq.* Section 302(A) continues to provide that "[t]he liability prescribed in this act shall be exclusive **and in place of all other liability of**

Supreme Court has recently affirmed that this statutory language "makes it clear that the Legislature intended that accidental injuries will fall within the confines of the Workers' Compensation Act **and that an employer's liability for these injuries is exclusive under the Act**." *Price v. Howard*, 2010 OK 26, ¶ 8, 236 P.3d 82 (emphasis added).

An employee may bypass the Workers' Compensation Court and resort to the District Court only for work-related injuries resulting from intentional misconduct. *Roberts v. Barclay*, 1962 OK 38, 369 P.2d 808, 809; *Davis v. CMS Cont'l Natural Gas, Inc.*, 2001 OK 33, 23 P.3d 288, 294-95. The Oklahoma Supreme Court adopted the "substantial certainty" standard for determining whether the employer's conduct rises to the level of intentional misconduct. *Parret v. UNICCO Serv. Co.*, 2005 OK 54, 127 P.3d 572, 579.[2]

To establish that an employer's conduct was intentional, the plaintiff must prove that the employer (1) desired to bring about the worker's injury or (2) **acted**

---

**the employer and any of his or her employees, at common law or otherwise, for such injury, loss of services, or death, to the employee**, or the spouse, personal representative, parents, or dependents of the employee, or any other person, except in the case of an intentional tort, or where the employer has failed to secure the payment of compensation for the injured employee." (emphasis added) The amendments to the Workers' Compensation Code were passed in Senate Bill 878, which was signed into law and effective August 26, 2011. At the time of Sid Liechti's employment with Pe Ben, 85 O.S. §§ 11 and 12 were in effect.

[2] *Parret v. UNICCO* has been firmly rejected by the Oklahoma legislature. Recent amendments to the Workers' Compensation Act bar claims under *Parret*. Effective August 27, 2010, 85 O.S. § 12 was amended to include the following language: "An intentional tort shall exist only when the employee is injured as a result of willful, deliberate, specific intent of the employer to cause such injury. **Allegations or proof that the employer had knowledge that such injury was substantially certain to result from its conduct shall not constitute an intentional tort. The issue of whether an act is an intentional tort shall be a question of law for the court**." (emphasis added)

**with the knowledge that such injury was substantially certain to result from the employer's conduct.** *Parret*, 127 P.3d at 579. "[T]he employer must have intended the act that caused the injury with knowledge that the injury was substantially certain to follow." Id. Only conduct which rises to the level of intentional misconduct will remove an employee's claim from the exclusivity of the Workers' Compensation Act. Id. at 579; see also, *Davis*, 23 P.3d at 295 (recognizing that "establishing that an employer has acted in a manner resulting in an employee's injuries being substantially certain presents a formidable barrier to recovery in tort").

Carelessness, negligence, or even gross negligence is not enough. Under the substantial certainty standard, "'[t]he defendant who acts in the belief or consciousness that he is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, **but it is not classified as an intentional wrong**.'" (emphasis added) *Parret*, 127 P.3d at 579 (quoting Prosser, *Handbook of the Law of Torts*, § 8 at 32). Substantial certainty is a very high standard:

> **The employer must have knowledge of more than "foreseeable risk," more than "high probability," and more than "substantial likelihood."** Nothing short of the employer's knowledge of the "substantial certainty" of injury will remove the injured worker's claim from the exclusive remedy provision of the Workers' Compensation Act, thus allowing the worker to proceed in district court.

*Parret*, 2005 OK 54, ¶ 25, 127 P.3d at 579 (emphasis added).

12

Subsequent decisions have affirmed that substantial certainty is more than negligence or gross negligence. **"[N]othing short of a demonstration of the employer's knowledge of the substantial certainty of injury will suffice**." *Price v. Howard*, 2010 OK 26, 236 P.3d 82, 88 (Okla. 2010) (affirming summary judgment for employer who had performed modifications on plane which later crashed while employee was riding as a passenger in direct violation of safety regulations) (emphasis by the Court). Thus, the "employer's cognizance of a foreseeable risk, high probability, or substantial likelihood of injury are insufficient to impose tort liability" under the substantial certainty standard. *Id. Parret* "did not enlarge the intentional tort exception," but instead merely clarified the applicable standard "so that there would be **no blurring of the line between intentional and accidental injuries**." *CompSource Okla. v. L & L Constr., Inc.*, 2009 OK CIV APP 28, ¶ 13, n. 3, 207 P.3d 415, 419 at n.3 (emphasis added).

When asked to identify all evidence supporting Plaintiff's *Parret* claims against Pe Ben, Plaintiff only cited to the OSHA citation that was issued after Sid Liechti's death.  [See Exh. 6; See Undisputed Facts 16 and 17]   This OSHA violation claimed that Pe Ben did not furnish a place of employment "free from recognized hazards that were causing or likely to cause death or serious injury ... ."  Specifically, the OSHA Citation (which is attached hereto as Exh. 7), included this specific language:

> Section 5 (a) (1) of the Occupational Safety and Health Act of 1970:  The employer did not furnish employment and a place of employment which was free from recognized hazards that were causing or likely to cause death or serious physical harm to employees in that employees were exposed to struck by or crushing injuries from the movement of vehicles and equipment.
>
> Pe Ben USA Inc. pipe staging yard east of Ponca City, OK:  On or about December 23, 2009 and at times prior thereto, employees working on the ground were exposed to hazards from the movement of trucks and equipment during the offloading of pipeline stock.
>
> One feasible means of abatement for this hazard, among others, would be to establish and communicate standard procedures to ensure nearby personnel are visually located and outside of an established danger zone before moving equipment.

Plaintiff also claims that pursuant to the OSHA report, Pe Ben (a) did not have policies and procedures in place for locating and ensuring ground personnel were clear prior to the movement of vehicles; and (b) Pe Ben "knew that injuries could result" during the process of unloading pipe from trucks in the staging yard.

Plaintiff's present accusations that Pe Ben should have had more effective policies and procedures in place or that Pe Ben knew that injuries "could result" from the operation of moving pipe from a truck to the storage location falls far short of establishing liability under the "substantial certainty" standard. Likewise, claiming that Pe Ben failed to keep the work site "free of recognized hazards" also falls far short of the "substantial certainty of harm" standard.

Complaints about how an employer trains or supervises employees, or maintains the workplace are "based on negligence … [and are] the type of claim[s] that [are] barred by the exclusive remedy provision of section 12" of the Workers' Compensation Act. *Armstrong v. Carr*, 2003 OK CIV APP 80, 77 P.3d 598, 603. For example, in *Jensen v. Sport Bowl, Inc*., 469 N.W.2d 370, 372 (S.D. 1991), the appellate

14

court affirmed summary judgment for the employer ruling that evidence that the employee was an "inexperienced, inadequately trained 14-year-old boy ordered by his employer, without any warning of the danger, to perform a maintenance task which the employer knew from personal experience to be risky" was not sufficient to meet the substantial certainty standard. *Id. See also Teal v. The Colonial Stair & Woodwork Co.*, No. CA2004-03-009, 2004 WL 2676331, at *4 (Ohio Ct. App. Nov. 22, 2004) (inadequate training, even if true, "would constitute negligence or recklessness at best, and would not rise to the level of substantial certainty".)

**Plaintiff has failed to present any evidence that Pe Ben was substantially certain that Plaintiff would be injured**. As previously noted, Plaintiff must demonstrate that Pe Ben had actual subjective knowledge that it was substantially certain that the deceased would be injured on December 23, 2009. *Price v. Howard*, 2010 OK 26, ¶10, 236 P.3d 82. "The employer's cognizance of a foreseeable risk, high probability, or substantial likelihood of injury are insufficient to impose tort liability." Id.  Plaintiff has presented no such evidence of subjective knowledge.

In the First Amended Complaint, Plaintiff levels a variety of conclusory allegations against Pe Ben. Plaintiff claims that Pe Ben "acted with actual knowledge that serious injury or death was substantially certain to occur"  [Exh. 5 – First Amended Complaint, ¶ 10]; that Pe Ben "did not have proper safety measures in place" [Exh. 5, ¶ 11]; that Pe Ben "failed to keep the workplace free" of hazards which were substantially certain to result in serious injury or death [Id., ¶ 13]; and

that Pe Ben "failed to train" personnel "on the substantially certain risk for death or serious injuries associated with groundwork around vehicles when unloading pipe in a staging yard." [Id., at ¶ 13]   These accusations swim against a sea of contrary law and facts.

It is clear that Plaintiff cannot rely upon these conclusory allegations either to state a claim or to overcome a Motion for Summary Judgment. The Oklahoma Supreme Court has emphasized that mere allegations of intentional conduct "will not circumvent the Workers' Compensation Act." *Parret,* 2005 OK 54, ¶ 26.  When the Plaintiff was called upon to present facts in support of his conclusory allegations, it is clear that Plaintiff has no evidence that anyone with Pe Ben knew with substantial certainty that the deceased was going to be injured. There is also no evidence that anyone with Pe Ben demanded the deceased to follow a procedure that was substantially certain to result in the death of Sid Liechti.  As shown by the Affidavits of Steve Johnson, Randy Ostman, and Bill Cunningham, no one anticipated or foresaw that Sid Liechti was going to come forward before the truck had left and place his feet in the path of the trailer tires.   Steve Johnson and Randy Ostman both acknowledge that they had received safety training and that they had been trained in common sense safety measures which included checking the perimeter of the truck before proceeding.  Ostman simply failed to see Liechti in his mirrors before proceeding.   Pe Ben had logged thousands of trips to unload pipe <u>without anyone</u>

being struck or run over by a moving truck.   [Undisputed Fact 15.]  This was a tragic accident and nothing more.

This case is controlled by the holding in *Price v. Howard*, 2010 OK 26, 236 P.3d 82. In *Price*, an employee and other corporate executives were killed when the company plane crashed. However, the Supreme Court ruled that even if it were assumed that the employer knew that the plane was overweight, knew that the plane took off in foul weather, and knew that the plane was carrying passengers in violation of the plane's flight restrictions, **"the record does not demonstrate that the employer understood that there was a substantial certainty of injury**." 2010 OK at ¶ 2. (emphasis added)

Parties asserting *Parret* claims often assert that the employer failed to have effective safety procedures in place and that this failure constitutes an unsafe practice that is sufficient to establish that the employer somehow acted with substantial certainty of injury.  Plaintiff appears to be presenting a similar claim in this case.  However, this argument has been frequently rejected by the courts in states that have adopted the "substantial certainty" standard. For example, see *Sullivan v. Lake Compounce Theme Park, Inc.*, 277 Conn. 113, 118, 889 A.2d 810 (2006). "To satisfy the substantial certainty standard, a plaintiff must show more than that [a] defendant exhibited a lackadaisical or even cavalier attitude toward worker safety . . . Rather, a plaintiff must demonstrate that his employer believed that its conduct was substantially certain to cause the employee harm." (Citation

omitted; internal quotation marks omitted.) Id. "[F]ailure to take effective remedial action does not translate to an affirmative intent to create an injury causing situation . . . **[A] high risk or probability of harm is not equivalent to the substantial certainty without which an actor cannot be said to intend the harm in which his act results** . . . [and] failure to take affirmative remedial action, even if wrongful, does not demonstrate an affirmative intent to create a situation that creates personal injury . . ." (Citations omitted; internal quotation marks omitted.) Id., 814. (emphasis added) See also *Fleetwood Homes of Fla. v. Reeves*, 833 So. 2d 857 (Fla. 2d DCA 2002), holding that an employee cannot "add together small risks of injury in order to reach a combined total where the likelihood of injury to some employee sometime was substantially certain." 833 So.2d 877, pp. 868 – 869. In *Sorban v. Sterling Engineering Corp.*, 79 Conn.App. 444, 830 A.2d 372, cert. denied, 266 Conn. 925, 835 A.2d 473 (2003), the court stated: "[A] wrongful failure to act to prevent injury is not the equivalent of an intention to cause injury." (Internal quotation marks omitted.) Id., 457.

Plaintiff's argument that there are risks in the process of moving and stacking pipe has also been deemed insufficient to establish substantial certainty of harm. In the recent case of *Shue v. High Pressure Transports*, LLC, 10-CV-0559-CVE-PJC, 2010 WL 4824560 (N.D. Okla. Nov. 22, 2010), Judge Eagan dismissed a similar claim, stating: "Plaintiff seems to be arguing that she can allege a *Parret* claim by asserting that High Pressure knew that it was transporting a dangerous substance, anhydrous

ammonia, and 'failed to protect' Shue from injury. . . . . **This is a garden variety negligence claim**, and the mere fact that High Pressure was in the business of transporting a potentially dangerous substance does not convert every workplace injury into an intentional tort." [emphasis added; citations to court docket omitted]

**Alleged violations of safety regulations do not establish "substantial certainty**." Plaintiff rests much of her case on the contention that Pe Ben violated safety rules and regulations and that such violations demonstrate that Pe Ben acted with the requisite subjective intent or knowledge that the deceased was substantially certain to be harmed. Plaintiff relies heavily on a subsequent OSHA investigation that concluded that Pe Ben "did not furnish employment and a place of employment which was free from recognized hazards that were causing or likely to cause death or serious physical harm to employees in that employees were exposed to struck by or crushing injuries from the movement of vehicles and equipment." [Exh. 5, ¶ 12, quoting from OSHA Citation; see OSHA Citation at Exh. 7.]

Significantly, even in the face of numerous asserted violations of safety regulations and practices, the Oklahoma Supreme Court held in *Price* that a "violation of government safety regulations, **even if willful and knowing**, does not rise to the level of an intentional tort or an actual intent to injure." 2010 OK 26, ¶ 16, 236 P.3d 82, 90. (emphasis added). The Oklahoma Supreme Court soundly rejected the *Parret* claim in *Price* with this additional guidance:

¶17 Establishing that an employer has acted in a manner resulting in an employee's injuries being substantially certain presents a formidable barrier to recovery in tort. Under the facts presented, we cannot say that the employer's conduct amounted to an intentional tort or that the employer desired to bring about the worker's injury or acted with the knowledge that such injury was substantially certain to result from the employer's conduct. Therefore, we hold that the evidence is insufficient under *Parret v. UNICCO Service Co.*, 2005 OK 54, 127 P.3d 572 to subject the employer to liability outside that provided by the Workers' Compensation Act.

See also *Shue v. High Pressure Transports, LLC*, 10-CV-0559-CVE-PJC, 2010 WL 4824560 (N.D. Okla. Nov. 22, 2010)(recognizing that the "Oklahoma Supreme Court has rejected the use of OSHA violations to establish an intentional tort for a *Parret* claim.").  This same argument has been repeatedly rejected in other cases.

In other states that have adopted the "substantial certainty" exception to the exclusive remedy provisions of the Workers' Compensation laws, courts have rejected the argument that a violation of a safety regulation or standard provides evidence that the employer acted with substantial certainty that the employee would be harmed. See *Reeves v. Structural Preservation Systems*, 731 So.2d 208, 212 (La. 1999); *Bergeron v. Murphy Oil, U.S.A., Inc.*, 05–0271, 903 So.2d 496, 502 (La.App. 4 Cir. 04/28/05); *Cortez v. Hooker Chemical*, 402 So.2d 249, 250–51 (Ct. App. La., 4th Cir. 1981). In *Reeves,* the Louisiana Supreme Court collected a number of Louisiana court decisions and concluded that the courts had "almost universally held that employers are not liable under the intentional act exception for violations of safety

standards or for failing to provide safety equipment." See *Reeves*, 731 So. 2d 208, at 211 -212.

Professor Larson, the recognized authority on workers' compensation law, has also rejected the argument now presented by Plaintiff: "Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character." Larson, 2A *Workmen's Compensation Law*, § 68.13 (1989).

Louisiana courts have pondered the "substantial certainty" test for many years and have repeatedly rejected Plaintiff's present claim that an OSHA violation establishes that the employer acted with substantial certainty of harm.  In *Reeves v. Structural Pres. Sys.,* 731 So. 2d 208, 211 (La. 1999), Mr. Reeves was directed to manually move a large sandblasting pot even though the pot had an OSHA- required sign on it that stated "DO NOT MOVE MANUALLY." While trying to move the large pot, Reeves was injured.  Reeves sued in tort arguing that it was substantially certain that he would be harmed.  The Louisiana Supreme Court rejected this claim and noted that numerous court decisions "have almost universally held that employers are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment."  [*Id*., citing numerous cases].

21

As in this case, the plaintiff in *Reeves* also argued that the employer's supervisor "feared that someone would eventually get hurt moving the pot manually" and this knowledge was enough to establish substantial certainty. This "inevitable injury" argument was rejected in *Reeves*. "**Believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation**." Id., at 212. (emphasis added). *Reeves* also stated: "'Substantially certain to follow' requires more than a reasonable probability that an injury will occur and 'certain' has been defined to mean 'inevitable' or 'incapable of failing.' " . . .  "[A]n employer's mere knowledge that a machine is dangerous and that its use creates a high probability that someone will eventually be injured is not sufficient to meet the 'substantial certainty' requirement." *Reeves* at p. 213 [internal citations omitted].

See also *Simoneaux v. Excel Group, LLC*, 936 So. 2d 1246, 1248 (La. 2006), citing the following authority:  "[A]n employer's mere knowledge that a machine is dangerous and that its use creates a high probability that someone will eventually be injured is not sufficient to meet the 'substantial certainty' requirement." *Armstead v. Schwegmann Giant Super Markets, Inc.,* 618 So.2d 1140, 1142 (La.App. 4 Cir.1993), writ denied, 629 So.2d 347 (La.1993). "Further, mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing." Id. (citing *Tapia v.*

22

*Schwegmann Giant Supermarkets, Inc.*, 590 So.2d 806, 807-808 (La.App. 4 Cir.1991).)

The Court should also consider *Brown v. Pennzoil-Quaker State Co.*, 175 S.W.3d 431, 437 (Tex. App. 2005).  In *Brown*, (applying Louisiana law) an explosion occurred at Pennzoil's refinery in Shreveport, injuring the employee.  The employee presented evidence that there were numerous OSHA violations and provided testimony from an expert witness stating that "[Pennzoil's] inspection program failed to comply with the American Petroleum Institute's recommendations and did not comport with industry standards."  *Id.*  The court ruled that this evidence was <u>not enough</u> to show that the employer acted with substantial certainty of harm. Plaintiff makes the same erroneous argument here.

## **CONCLUSION**

Plaintiff has failed to show that Pe Ben subjectively knew that the accident on December 23, 2009, was substantially certain to occur.  This bars Plaintiff's *Parret* claim. For the stated reasons and based upon the authority cited, the Defendant respectfully prays for summary judgment on all claims asserted by Plaintiff against the Defendant.

Respectfully submitted,

s/  Randall J. Wood
Robert S. Lafferrandre, OBA No. 11897
Randall J. Wood, OBA No. 10531
PIERCE COUCH HENDRICKSON
 BAYSINGER & GREEN, L.L.P.
1109 N. Francis
Oklahoma City, Oklahoma  73106
Telephone:  (405) 235-1611
Facsimile:  (405) 235-2904
rlafferrandre@piercecouch.com
rwood@piercecouch.com

*Attorneys for Defendant*
*Pe Ben USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of July, 2012, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Noble McIntyre       noble@mcintyrelaw.com
Jeremy Thurman     Jeremy@mcintyrelaw.com.
McINTYRE LAW, P.C.
8601 S. Western Ave.
Oklahoma City, OK  73139

S. Alex Yaffe         ay@fylaw.com
FOSHEE & YAFFE
12231 S. May Avenue
P. O. Box 890420
Oklahoma City, OK  73189
*Attorneys for Plaintiff*

s/  Randall J. Wood
Randall J. Wood